UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STORM STOCKSTILL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-265 (VLB) |
| QUINNIPIAC UNIVERSITY, | : | |
|     Defendant. | : | May 19, 2010 |

MEMORANDUM OF DECISION AND ORDER DENYING
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [Doc. #4]

This matter is before the Court on the Plaintiff, Storm Stockstill's, motion for a preliminary injunction requiring the Defendant, Quinnipiac University ("Quinnipiac"), to reinstate his admission so that he may continue to attend classes while his legal dispute with Quinnipiac is resolved. See Doc. #4.

The Plaintiff filed this action on February 23, 2010. He asserts two causes of action, one for breach of contract and the second for promissory estoppel, alleging that Quinnipiac rescinded his admission for enrollment for the Spring 2010 semester without any legitimate reason. Concurrent with the filing of his Complaint, the Plaintiff filed an emergency motion for a temporary restraining order and subsequent entry of a preliminary injunction. The Court denied the Plaintiff's motion for a temporary restraining order on the basis that he had failed to attach an affidavit or verified complaint establishing irreparable injury, and treated the motion as a motion for a preliminary injunction. See Doc. ##5, 12. A preliminary injunction hearing was held on March 11, 2010, during which both parties presented witnesses as well as documentary evidence. For the reasons

set forth below, the Plaintiff's motion for a preliminary injunction is DENIED.

## I. <u>FACTUAL FINDINGS</u>

The testimony and evidence presented at the hearing established the following facts.  On November 5, 2008, Quinnipiac offered the Plaintiff a partial athletic scholarship for the 2009-2010 academic year to join the University's lacrosse team.  At the time the scholarship was offered, the Plaintiff had not been accepted to Quinnipiac.  The Plaintiff was recruited by several other universities to play lacrosse, including but not limited to Manhattan College, Gettysburg College, Hoffstra University, and Trinity College.  He was also offered an athletic scholarship to play lacrosse by C.W. Post Campus of Long Island University, which he declined in favor of Quinnipiac's offer.  On November 15, 2009, the Plaintiff accepted the athletic scholarship from Quinnipiac and was thereafter prohibited by NCAA rules from contact with any other universities regarding attendance on an athletic scholarship.

Approximately three months after Quinnipiac's scholarship offer, the Plaintiff was arrested and charged with aggravated stalking of a minor - a second degree felony that could result in imprisonment for up to five years - and battery. According to newspaper reports of the incident leading to his arrest, the Plaintiff admitted to police officers that he and a fellow Jupiter (Florida) High School student "fake raped" a younger male student in the gym locker room.  The Plaintiff testified that the conduct occurred over a three day period, and that other students and coaches observed and laughed.  While he considered his behavior

to be "horseplay" at the time, he later came to appreciate the seriousness of the incident and expressed remorse for the victim.

As a consequence of his offense and the negative publicity resulting from his offense, the Plaintiff was suspended from his high school and did not graduate in June 2009 with his class.  Rather, he completed his high school course work on-line and was awarded a diploma in December 2009.  Eventually, in August 2009, the Plaintiff entered a guilty plea to a misdemeanor battery charge and was sentenced to a term of probation of one year, 200 hours of community service, and mandatory counseling sessions with a psychologist.  Under the terms of his probation, the Plaintiff was required to report in person once per month to his assigned probation officer, Debra Somerville.  He first met with Ms. Somerville in August 2009, about one week after imposition of his sentence.  She informed him at that time that she would attempt to transfer his probation from Florida to Connecticut, but indicated that she needed to confirm that he was admitted to Quinnipiac before she could apply to transfer his probation.  Absent a transfer or permission from his probation officer, the Plaintiff was not permitted to leave Florida under the terms of his probation.

Quinnipiac first became aware of the Plaintiff's criminal arrest in Spring 2009.  His application for admission to the University was set aside pending the resolution of his criminal matter.  In August 2009, Quinnipiac was informed by the Plaintiff's mother that his criminal charges had been reduced.  Subsequently, by letter dated December 15, 2009 from the Plaintiff's attorney to Joan Isaac Mohr,

Vice President of Admissions at Quinnipiac, the Plaintiff disclosed his conviction for misdemeanor battery and sentence of a one year term of probation and indicated that the Plaintiff was in compliance with all terms of his probation.  See Pl. Exh. 1.  In the letter, his attorney further expressed the opinion that the Plaintiff would be a welcome addition and contributor to the Quinnipiac community.  Id.  The letter did not, however, disclose the fact that the Plaintiff's probationary status restricted him from traveling outside of Florida.

On January 4, 2010, via email from Ms. Mohr, Quinnipiac offered to admit the Plaintiff as an undergraduate student beginning in the Spring 2010 semester, subject to its receipt of an official transcript proving that he had graduated from high school.  See Pl. Exh. 2.  In admitting the Plaintiff, Quinnipiac relied upon the letter from his attorney indicating that he had pleaded guilty to a charge of misdemeanor battery, been sentenced to a one year term of probation, and was in compliance with all conditions of his probation.  Quinnipiac did not request follow-up information or conduct an independent investigation regarding the effect of his probation on his ability to reside and attend classes in Connecticut and to participate in the University's lacrosse program.  In January 2010, the Plaintiff accepted his admission to Quinnipiac and paid his tuition and other fees as required.

Upon receiving confirmation of the Plaintiff's admission to Quinnipiac, Ms. Somerville applied with the Connecticut Department of Corrections to transfer his probation to Connecticut.  However, because the process would take

4

approximately four weeks, Ms. Somerville issued the Plaintiff a travel permit to go to Connecticut pending a decision on his transfer application.  The travel permit did not authorize the Plaintiff to remain in Connecticut permanently. Nevertheless, in preparation for the beginning of classes, the Plaintiff moved from his residence in Florida to on-campus housing at Quinnipiac.  In January 2010, he enrolled in classes for the Spring 2010 semester, was issued a University identification card, and began attending classes and participating in the University's lacrosse program.  The Plaintiff testified that Quinnipiac is in the Eastern College Athletic Conference (ECAC) lacrosse league, which includes lacrosse teams from Ohio State University, the University of Denver, the University of Detroit Mercy, and Bellarmine University in Kentucky.  Although Quinnipiac plays more home games than away games, participation on the team requires periodic travel, including travel to Denver and New York.  The first game of the 2010 season was scheduled for February 27.  At no time did the Plaintiff inform Quinnipiac that his participation as a member of the team would violate the conditions of his probation, nor is there any evidence on the record that the Plaintiff sought permission from his probation officer to travel to the states in which Quinnipiac lacrosse away games were scheduled to be played.  The Florida Probation Department was not informed of the Plaintiff's intent to nor asked to approve the Plaintiff's travel to any states other than Connecticut.

Approximately three weeks after moving to Quinnipiac's campus in Connecticut, the Plaintiff received a phone call from Ms. Somerville informing him that the Connecticut Department of Corrections had declined to accept the

transfer of his probation.  The reason given for the denial was that the Plaintiff was already in Connecticut at the time of the transfer application.  Ms. Somerville informed the Plaintiff that he would have to return home, but also said that he should contact his attorney because there may be something that his attorney could do for him.  The Plaintiff immediately contacted his mother in Florida, who in turn contacted his attorney.  His attorney then called him and told him not to worry and that he would take care of the problem by changing his probation status from supervisory to administrative, which would permit him to contact his probation officer in Florida over the phone periodically rather than report in person.  The attorney also told the Plaintiff that he could remain in Connecticut rather than returning to Florida.  The Plaintiff informed his lacrosse coach that the Connecticut Department of Corrections had denied his transfer application and that he may have to return to Florida, but he did not tell anyone else at the University.  The coach, in turn, informed Ms. Mohr of the Plaintiff's situation.

On February 3, 2010, Ms. Somerville, on behalf of the Florida Department of Corrections, faxed a notice to Quinnipiac's President, John Lahey, which identified the Plaintiff as a "sexual predator or sexual offender" under Florida law.  See Pl. Exh. 3.  The document was also cced to the "Offender" and the "Offender File."  Id.  Since President Lahey was out at the time, the fax was forwarded to but not received by the Vice President of Student Affairs until February 9, 2010.  After reviewing the notice, the Vice President of Student Affairs convened a meeting the following day, February 10, 2010, with Ms. Mohr as well as the Vice President of Academic Affairs, President Lahey's Assistant, and the

Vice President of Finance's Assistant.  At the meeting, the University officials present discussed the notice and also discussed the information learned from the lacrosse coach involving the Connecticut Department of Correction's denial of the Plaintiff's application to transfer his probation from Florida to Connecticut. The decision was made at that time that further investigation was necessary regarding the Plaintiff's status as a sexual offender as well as his probationary status, and that the Plaintiff would have to leave campus while the investigation was ongoing.

On February 12, 2010, the Plaintiff was pulled aside by his lacrosse coach after practice and told that he needed to go to the Student Affairs Office immediately, which he did.  A University official in the Student Affairs Office informed the Plaintiff that he had to leave campus by 7:00 p.m. that same evening.  The Plaintiff packed a duffel bag with some belongings and left that evening as requested.  He returned to Florida the following day.  As of the date of the hearing, he had not returned to collect the remainder of his personal belongings.  The Plaintiff's access to Quinnipiac's intranet was promptly revoked, and therefore he has been unable to check his University email account or log onto his course websites.

Also on February 12, 2010, the Plaintiff's criminal attorney in Florida appeared before Judge John J. Hoy in Palm Beach County Circuit Court and moved to convert the Plaintiff's probation from supervisory status to administrative status.  Later on that same date, the Plaintiff's attorney faxed President Lahey a letter along with a judicial document that ostensibly converted

the Plaintiff to "administrative probation" status, described by the Plaintiff's attorney as "a form of non-contact supervision in which an offender who represents a low risk of harm to the community may be placed on non-reporting status until the expiration of the term of supervision." Pl. Exh. 4. However, the judicial document attached to the letter was not an order signed by the Judge. Instead it appears to be a single unsigned page in a 19 page form that includes a handwritten notation at the bottom stating "Probation converted to Admin. Probation." See Pl. Exh. 5. The attorney's letter also indicated that the previous notice signed by Ms. Somerville had been sent in error. See Pl. Exh. 4. Ultimately, the Plaintiff's attorney did provide Quinnipiac with an order signed by Judge Hoy converting the Plaintiff's probation to administrative probation, but that order was signed on February 16, 2010 rather than February 12, 2010. See Pl. Exh. 10. Moreover, there was nothing to indicate that the Plaintiff's altered reporting status affected his right to travel and remain in Connecticut or to travel to other states.

Thereafter, on February 15, 2010, President Lahey received further correspondence from Barbara M. Barber, a Correctional Probation Supervisor with the Florida Department of Corrections, stating that Ms. Somerville had sent the February 3, 2010 notice "in error" and that the Plaintiff "is not a sex offender or sexual predator." See Pl. Exhs. 6 and 7. The correspondence further stated that the transfer request to Connecticut Probation was no longer required because the Plaintiff's status had been transferred to administrative probation. See Pl. Exhs. 6 and 7. Unlike the February 3, 2010 notice, the correspondence

8

sent by Ms. Barber on February 15, 2010 was not cced to the "Offender" or "Offender File," nor did it address travel to other states.

After considering the facts that had come to light regarding the Plaintiff's probationary status, the February 3, 2010 notice sent by Ms. Somerville, and the subsequent correspondence from the Plaintiff's attorney, Quinnipiac decided that further investigation was necessary and chose to rescind the Plaintiff's admission for the Spring 2010 semester.  Ms. Mohr testified that Quinnipiac had several concerns related to the Plaintiff that contributed to its decision to rescind his admission.  First, Quinnipiac had become suspicious that the Plaintiff and his attorney had failed to fully disclose material information regarding his probationary status during the application process, including the fact that he was in Connecticut on a travel permit and was not legally authorized to remain in Connecticut at the time he moved onto the campus, enrolled in classes, and began participating in the lacrosse program.  In addition, it remained unclear to Quinnipiac whether the February 3, 2010 form identifying the Plaintiff as a "sexual offender or sexual predator" remained in his probation file, particularly in light of the fact that the original notice had been copied to the "Offender File" whereas the subsequent correspondence from Ms. Barber was sent only to President Lahey.  This was a concern to Quinnipiac not only because it remained unclear whether the Plaintiff did in fact qualify as a sexual offender or sexual predator under Florida law, but also because it was unknown to Quinnipiac who had access to the file and whether such information could become public and thus damage the University's reputation and potentially cause other students and their

parents to fear for their safety.  Further, although it had received correspondence from the Plaintiff's attorney and the Florida Department of Corrections indicating that the Plaintiff's probation had been converted from supervisory to administrative status, Quinnipiac wanted to have an opportunity to ascertain whether the Connecticut Department of Corrections had any concerns regarding the Plaintiff's probationary status and whether they would consider him to be legally authorized to permanently reside in Connecticut for the remainder of his probationary term in light of the conversion to administrative probation.

Therefore, by letter dated February 18, 2010, Quinnipiac notified the Plaintiff that it had rescinded his acceptance to enroll in the Spring 2010 semester.  See Pl. Exh. 8.  The letter stated that Quinnipiac needed at least several weeks to review and research the information that had come to light after the Plaintiff's enrollment regarding his probationary status, and indicated that the Plaintiff could apply for readmission for the Fall 2010 semester.  Id.

The Plaintiff testified that he is unsure what the NCAA eligibility rules provide in light of Quinnipiac's rescission of his admission.  He stated that, if he had transferred to another university, he would have been required to sit out a year and thus would lose a year of NCAA eligibility, although he did not know if this rule would apply in his present circumstances.  He is also uncertain as to what the status of his scholarship is in light of the rescission of his admission.

## II.  DISCUSSION

### A.  Legal Standard

"[A] party seeking a preliminary injunction must demonstrate (1) the

likelihood of irreparable injury in the absence of such an injunction, and (2) either
(a) a likelihood of success on the merits or (b) sufficiently serious questions
going to the merits to make them a fair ground for litigation plus a balance of
hardships tipping decidedly toward the party requesting the preliminary relief."
Zino Davidoff v. CVS Corp., 571 F.3d 238, 242 (2d Cir. 2009) (quoting Fed. Express
Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000)).  An injury is
considered irreparable when the Plaintiff demonstrates that it is "non-
compensable in terms of money damages."  LaForest v. Former Clean Air Holding
Co., 376 F.3d 48, 56 (2d Cir. 2004); see also Wisdom Import Sales Co., L.L.C. v.
Labatt Brewing Co., Ltd., 339 F.3d 101, 113-14 (2d Cir. 2003) (defining "irreparable
harm" as "certain and imminent harm for which a monetary award does not
adequately compensate").

      "When the movant seeks a 'mandatory' injunction - that is . . . an injunction
that will alter rather than maintain the status quo - [he] must meet the more
rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success
on the merits."  Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).

## B. Irreparable Injury

      The Plaintiff argues that he will be irreparably injured if the Court does not
grant an injunction requiring Quinnipiac to reinstate his admission and permit
him to attend classes while this case is pending because he will fall behind his
peers both academically and financially, impeding his academic career and
eventual entry into the workforce and limiting his future educational endeavors
and earning capacity.  The Plaintiff further argues that he will suffer irreparable

harm in the absence of an injunction because he will be unable to participate in Quinnipiac's lacrosse program and may lose his scholarship to play lacrosse.

The Court is unpersuaded by the Plaintiff's claims of irreparable injury. The Plaintiff's contention that missing classes for one semester will impede his future educational and career opportunities is purely speculative, as he has presented no evidence to support this contention.  See Ben-Yonatan v. Concordia College Corp., 863 F. Supp. 983, 986 (D. Minn. 1994) (rejecting student's claim that her suspension from college would cause irreparable injury because she may never be admitted to medical school due to the resulting break in her academic record as "purely speculative").

Moreover, the sole case the Plaintiff cites in support of his claim of irreparable injury to his academic and career prospects is entirely inapposite to the present circumstances.  In Faulkner v. Jones, 10 F.3d 226 (4th Cir. 1993), the Fourth Circuit affirmed the district court's entry of a preliminary injunction permitting a female whose admission to the Citadel military college was revoked to attend day classes pending the outcome of the litigation.  However, Faulkner involved an equal protection challenge to the Citadel's policy of admitting only males to its Corps of Cadets, a unique undergraduate program incorporating rigorous military training.  Unlike Faulker, this case does not involve the alleged infringement of constitutional rights.  Also unlike Faulkner, the Plaintiff in this case has not alleged that Quinnipiac offers any unique academic program or training that he would be unable to obtain at another university.  Finally, in Faulkner, the scope of the preliminary injunction was substantially limited in that

the plaintiff was permitted only to attend day classes, and not to attend the Citadel's traditionally all male Corps of Cadets.  Here, the Plaintiff seeks full reinstatement, including on campus residence and full participation on the lacrosse team.  Therefore, <u>Faulkner</u> provides no support for the Plaintiff's claim of irreparable injury in this case.

Further, even assuming that loss of the ability to participate in collegiate athletics for a semester could constitute an irreparable injury, the Plaintiff's claim of irreparable injury in this case is defeated by his own testimony at the preliminary injunction hearing.  The Plaintiff admitted that participation in the lacrosse program required him to travel outside the State of Connecticut periodically for away games.  However, the evidence presented at the hearing established that, under the terms of his probation, the Plaintiff was not authorized to travel outside of the State of Florida until such time as his probation was transferred to Connecticut.  The Connecticut Probation Office ultimately declined to accept the transfer of his probation because he was in Connecticut at the time of his transfer request.  Although the Plaintiff testified that his probation officer granted him a travel permit to go to Connecticut, there is no evidence that he was ever authorized to permanently remain in Connecticut or to travel to any state other than Connecticut.  Therefore, the Plaintiff was unable to legally fulfill his responsibilities as a lacrosse player for Quinnipiac during the Spring 2010 semester not because of Quinnipiac's actions, but because of his probationary status resulting from his criminal offense.  Moreover, the alleged harm resulting to the Plaintiff from loss of his scholarship and NCAA eligibility is also

13

speculative, because he admitted that he is unsure of what the NCAA rules provide in light of the rescission of his admission, and there is no other evidence whatsoever in the record relating to any relevant NCAA rules or regulations.  In addition, he testified that he planned to pursue a career in business, and not as a professional lacrosse player.

### C.  Likelihood of Success on the Merits

Although the Court need not address the likelihood of success on the merits given its holding that the Plaintiff has not established irreparable injury, it will, nonetheless, do so in the interest of completeness.

As an initial matter, the Court must consider whether the injunction sought will alter rather than maintain the status quo, in which case a higher standard of proof would govern requiring the Plaintiff to show a "clear" or "substantial" likelihood of success.  Donninger, 527 F.3d at 47.  The Second Circuit has observed that the distinction between "mandatory" and "prohibitory" injunctions is "not without ambiguities or critics," and has "led to distinctions that are more semantic than substantive."  Tom Doherty Assocs. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (citation omitted).  This is especially true in breach of contract actions:

> Confusion in breach of contract cases as to whether an injunction is mandatory or prohibitory may stem from the meaning of "status quo." A plaintiff's view of the status quo is the situation that would prevail if its version of the contract were performed.  A defendant's view of the status quo is its continued failure to perform as the plaintiff desires.  To a breach of contract defendant, any injunction requiring performance may seem mandatory.

Id.

14

Here, the Court finds that the injunction sought by the Plaintiff is more properly characterized as prohibitory rather than mandatory.  The "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." LaRouche v. Kezer, 20 F.3d 68, 74 (2d Cir. 1994) (quoting Black's Law Dictionary 1410 (6th ed. 1990)).  Prior to the controversy giving rise to this suit, the Plaintiff was living in on-campus housing at Quinnipiac, was enrolled in and attending classes, and was participating in Quinnipiac's lacrosse program.  The Plaintiff's status as an enrolled student at Quinnipiac and member of the lacrosse team for the Spring 2010 semester is the status sought to be preserved by a preliminary injunction. Therefore, the Court will apply the less rigorous standard governing prohibitory injunctions in this case, which requires the Plaintiff to show either a "likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in his favor. Zino Davidoff, 571 F.3d at 242.

The Plaintiff argues that he is likely to succeed on the merits of his breach of contract claim because Quinnipiac offered him admission, he accepted, he fulfilled his contractual obligations by paying tuition and attending classes, and Quinnipiac then breached its admissions contract with him by rescinding his admission.  See Gupta v. New Britain General Hosp., 239 Conn. 574, 593 (1996) ("[C]ourts will entertain a cause of action for institutional breach of a contract for educational services . . . if the educational institution failed to fulfill a specific contractual promise[.]").

15

Quinnipiac contends, on the other hand, that the Plaintiff has not established a likelihood of success on the merits because its decision to rescind his admission is an academic decision entitled to judicial deference.  Courts have recognized that "an educational institution's academic decisions involve the exercise of professional judgment to which courts should defer."  Ruggiero v. Yale University, No. 3:06-cv-1165 (WWE), 2007 WL 2684631, at *2 (D. Conn. Sept. 10, 2007).  Thus, in order to maintain a breach of contract action against a university based upon an academic decision, the Plaintiff must show that the decision "was made arbitrarily, capriciously, or in bad faith."  Daley v. Wesleyan University, 63 Conn. App. 119, 133-34 (2001); see also Day v. Yale University School of Drama, No. CV970400876S, 2003 WL 1702550, at *2 (Conn. Super. Ct. Mar. 20, 2003) (student challenging dismissal from university's graduate program must prove that dismissal "resulted from arbitrary, capricious, or bad faith conduct," meaning that decision had no "discernable rational basis"); Burns v. Quinnipiac University, No. CV065003833S, 2009 WL 455701, at *1 (Conn. Super. Ct. Jan. 22, 2009) ("The Connecticut courts have been reluctant to intervene in claims which involve the reasonableness of conduct by educational institutions in providing particular educational services to students.").

In this case, the evidence presented at the hearing does not suggest that Quinnipiac's decision to rescind the Plaintiff's admission was made arbitrarily, capriciously, or in bad faith.  Instead, the evidence supports the conclusion that the decision was substantially justified.  During the admissions process, the Plaintiff disclosed his guilty plea to a misdemeanor charge of simple battery and

16

his sentence of a one year term of probation.  Quinnipiac received assurances from the Plaintiff's criminal attorney that he was in compliance with all conditions of his probation and would be a welcome addition and contributor to the Quinnipiac community.  The clear and intended implication of this statement was that the Plaintiff would not violate the terms of his probation by matriculating at Quinnipiac.  The letter was intentionally misleading or at best expedient because the Plaintiff's attorney knew that the Florida Probation Department would not issue a travel letter permitting him to travel to Connecticut or apply to transfer his probation to Connecticut until he was admitted to Quinnipiac.  The Plaintiff was admitted on the basis of these representations.  Thereafter, on February 3, 2010, Quinnipiac received a notification from the Florida Department of Corrections identifying the Plaintiff as a "sexual predator or sexual offender" under Florida law.  Around this same time, Quinnipiac also learned that the Plaintiff was on supervisory probation, which required him to meet with his probation officer in Florida, that the terms of his probation prohibited from traveling outside of Florida without permission unless his probation was transferred to Connecticut, and that his transfer application had been denied.

In light of these developments, Quinnipiac opted to reconsider its decision to admit the Plaintiff for the Spring 2010 semester in order to permit them further opportunity to independently investigate the facts learned after the Plaintiff's admission regarding his probationary status and classification as a sexual offender or sexual predator.  Thereafter, on February 12, 2010, the Plaintiff's criminal attorney faxed President Lahey a letter along with a judicial document

17

ostensibly converting the Plaintiff to administrative probation status.  On February 15, 2010, President Lahey received further correspondence from the Florida Department of Corrections, indicating that the February 3, 2010 notification had been sent in error and that the Plaintiff was not actually a "sexual predator or sexual offender."  However, unlike the original notification, this later correspondence was not copied to the Plaintiff's "Offender File."  In addition, neither the judicial document nor the February 15, 2010 letter provided any information regarding whether the Plaintiff's administrative probationary status now permitted him to travel outside of Florida and reside permanently in Connecticut during the remainder of his probationary term and fulfill his travel commitments as a member of the lacrosse team.  In light of these circumstances, the Court finds it eminently reasonable for Quinnipiac to have been concerned about both the legality of the Plaintiff's continued presence in Connecticut and his qualification as a "sexual predator or sexual offender."  Therefore, Quinnipiac's decision to rescind the Plaintiff's admission in order to further investigate the Plaintiff's status was not arbitrary, capricious, or done in bad faith, but instead represented a rational and prudent choice guided by the best interests of the University and the student population at large.  In these circumstances, the Court will not interfere with the University's judgment.

Moreover, based upon the evidence presented at the hearing, the Court believes that the Plaintiff is unlikely to succeed on the merits of his claim because the circumstances suggest that Quinnipiac has a meritorious defense to performance of its admissions contract with the Plaintiff.  Specifically, Quinnipiac

18

has a defense of fraud in the inducement, which is a well-established equitable defense to a breach of contract action in Connecticut.  See Barasso v. Rear Still Hill Road, LLC, 81 Conn. App. 798, 806 (2004).  The elements of fraud are "(1) that a false representation was made as a statement of material fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury."  Maturo v. Gerard, 196 Conn. 584, 587 (1985).

Connecticut courts recognize "fraud by nondisclosure," which "expands on the first three of [the] four element [and] involves the failure to make a full and fair disclosure of *known* facts connected with a matter about which a party has assumed to speak."  Statewide Grievance Committee v. Egbarin, 61 Conn. App. 445, 454 (2001) (emphasis in orginal).  "To constitute [fraud by nondisclosure], there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak."  Id.  "The duty to disclose known facts is imposed on a party insofar as he voluntarily makes disclosure.  A party who assumes to speak must make a full and fair disclosure as to the matters about which he assumes to speak."  Id. (citations and quotation marks omitted).

In this case, the testimony presented at the hearing suggests that there is strong probability that Quinnipiac will succeed on its fraud defense in this action, and therefore the Plaintiff has not established a substantial likelihood of success on the merits.  The testimony presented at the hearing established that, during the application process for admission to Quinnipiac, the Plaintiff disclosed the

19

fact that he had pleaded guilty to a misdemeanor charge of simple battery and

that he received a sentence of one year probation.  This disclosure is reflected in

a letter dated December 15, 2009 from the Plaintiff's criminal attorney, Jack A.

Goldberger, to Ms. Mohr.  The letter states, in pertinent part, as follows:

> [O]n August 10, 2009 Mr. Stockstill entered a guilty plea to a
> misdemeanor charge of simple battery.  He was placed on one year
> probation and has been in complete compliance of all terms of his
> probation.  As I have indicated, Mr. Stockstill's guilty plea was to a
> misdemeanor without any allegation of any kind of inappropriate sexual
> contact.

Pl. Exh. 2.

However, notably absent from the letter is any indication that, under the

terms of the Plaintiff's probation, he was not authorized to travel outside of the

State of Florida without permission, and was not permitted to remain permanently

in Connecticut unless and until his probation was transferred to Connecticut.

This information is clearly material to Quinnipiac's decision to admit the Plaintiff,

because the Plaintiff could not legally reside and attend classes at Quinnipiac's

campus in Connecticut if the terms of his probation prohibited him from traveling

outside of Florida.  Moreover, the Plaintiff was granted a scholarship by

Quinnipiac to play lacrosse even before his application for admission was

accepted.  Therefore, his participation on the lacrosse team was a factor

militating in favor of his acceptance.  However, at the time that he was admitted

to Quinnipiac, he was unable to legally fulfill his obligations as a lacrosse player

during the Spring 2010 semester because of the terms of his probation.  As noted

above, although the Plaintiff testified that his probation officer granted him a

20

travel permit to go to Connecticut, there is no evidence that he was ever authorized to permanently remain in Connecticut or to travel to any state other than Connecticut, which he would have to do in order to participate in several away games for the lacrosse team.  Instead, the Connecticut Department of Corrections ultimately denied his transfer application, at which time he was required to return to Florida.  The Plaintiff cannot claim ignorance of the terms of his probation.  Moreover, his knowledge of the travel prohibition can be assumed from his testimony that he received a travel permit from his probation officer to travel to Connecticut, which would have been unnecessary if the terms of his probation did not include a travel restriction.

Furthermore, Quinnipiac acted on the Plaintiff's nondisclosure to its detriment, because it granted a scholarship to the Plaintiff and admitted him for the Spring 2010 semester notwithstanding the fact that he could not legally reside and attend classes at a campus in Connecticut or participate in the lacrosse program at the time of his admission.  The scholarship and admissions spot given to the Plaintiff could have gone to another prospective student who could have legally attended classes and participated in the lacrosse program had it not been for the Plaintiff's nondisclosure regarding the terms of his probation. Although the Plaintiff suggests that the December 15, 2009 letter put Quinnipiac on notice of his probationary status, he offers no reason why Quinnipiac, a Connecticut university, should reasonably be expected to know the obligations attendant to a sentence of probation in Florida.  Indeed, Ms. Mohr testified that, in her experience, Quinnipiac had not previously dealt with prospective students

who were on probation at the time of their applications.  Furthermore, the Court finds that it is not Quinnipiac's obligation to research the law regarding Florida probation, or to contact officials at the Florida Department of Corrections or the Florida Court System for the purpose of investigating the Plaintiff's probationary status.  Rather, under Connecticut law, once the Plaintiff voluntarily disclosed information regarding his criminal conviction and sentence during the admissions process, he assumed a duty to make a full and fair disclosure as to that conviction and sentence, including the specific terms of his probation as they related to his legal ability to attend classes and participate in the lacrosse program at Quinnipiac during the Spring 2010 semester.  The Plaintiff, and not Quinnipiac, was in the best position to obtain full and accurate information regarding the terms of his probation, and he had a duty to disclose that information to Quinnipiac during the admissions process.  His attorney's letter disclosing his probationary status presented the opportunity for and a duty to make such disclosure, but the letter instead gave an impression which was contrary to reality.  Because the evidence presented at the hearing suggests that the Plaintiff failed to fully and accurately disclose material information regarding his probationary status to Quinnipiac, the Court holds that there is a substantial likelihood that Quinnipiac will successfully defend against the Plaintiff's breach of contract claim on the basis of his fraud.

The Court also finds that the Plaintiff is unlikely to succeed on the merits of his promissory estoppel claim.  A claim for promissory estoppel "requires proof of two essential elements:  the party against whom estoppel is claimed must do

22

or say something calculated or intended to induce another party to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury."  Chotkowski v. State, 240 Conn. 246, 268 (1997). "[U]nder the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213 (1987).

In this case, the Plaintiff has failed to establish a substantial likelihood of success on the merits of his promissory estoppel claim, for the following reasons.  First, the alleged promise which forms the basis of the Plaintiff's claim, Quinnipiac's promise to admit the Plaintiff for the Spring 2010 semester and allow him to participate in the lacrosse program, was necessarily conditioned upon his ability to legally reside and attend classes at Quinnipiac's campus in Connecticut and play in lacrosse games for Quinnipiac in Connecticut and other states.  However, he could not satisfy these conditions because he failed to have his probation transferred to Connecticut before moving here, and failed to ever even attempt to obtain permission from the Florida Probation Department to travel to other states for away games.  Second, in light of the Plaintiff's nondisclosure of the terms of his probation during the admissions process, specifically the travel restriction prohibiting him from leaving Florida, along with the circumstances surrounding the revelation that he may qualify as a sexual

23

offender or sexual predator under Florida law, Quinnipiac's decision to rescind his admission for the Spring 2010 semester was justified.

### D.  Balance of Hardships

In the alternative, the Plaintiff argues that the balance of hardships in this case tips decidedly in favor of him.  The Court disagrees.  As a result of Quinnipiac's rescindment of his offer of admission, the Plaintiff will miss college classes for one semester.  While he claims that his loss of one semester will impede his future educational and career opportunities, he failed to present any evidence to support this claim at the hearing and therefore it is purely speculative.  The Plaintiff also argues that he will be unable to play lacrosse during the Spring 2010 semester as a result of Quinnipiac's rescindment of admission, which will cause him to fall behind his peers in terms of his athletic skills and will potentially impact his athletic eligibility in subsequent semesters. Again, this argument is speculative.  The Plaintiff has presented no concrete evidence whatsoever regarding the impact that being unable to play college lacrosse for one semester will have on his future athletic eligibility.  Instead, he testified that he does not know what the NCAA eligibility rules provide in light of the rescindment of his admission, nor know what effect the rescindment will have on his scholarship.  Moreover, as noted above, the Plaintiff's ineligibility to play lacrosse for the Spring 2010 semester was not the result of Quinnipiac's actions, but instead was the result of his illegal acts and consequent probationary status prohibiting him from traveling outside of Florida.

Any hardship to the Plaintiff must be weighed against the hardship that

would be caused to Quinnipiac if the Court were to overturn its decision to rescind the Plaintiff's admission and enter a preliminary injunction requiring Quinnipiac to reinstate him.  The Court finds this hardship to be significant. Quinnipiac has a responsibility to all of its students and to the community at large, not just to the Plaintiff.  There are thousand of students attending Quinnipiac.  Permitting a student to matriculate when he may pose a danger to other students is a greater harm than the harm caused to the Plaintiff by rescinding his admission and causing him to miss one semester of classes. Furthermore, even if the Plaintiff did not actually pose a danger to other students, Quinnipiac harbored legitimate concerns regarding his status as a sexual offender or sexual predator under Florida law and whether or not his probation file reflects that he is classified as a sexual predator.  If information regarding the Plaintiff's status as a sexual predator were to become public, it could substantially damage Quinnipiac's reputation and generate concern among the students who attend as well as their families.  In addition, allowing the Plaintiff to matriculate without conducting a thorough independent investigation of his background and status in light of the information to which it is now privy would subject Quinnipiac to significant potential legal liability and reputational liability and damage all to the detriment of the University, including its students, faculty, and alumni.  In light of these legitimate hardships that an injunction would impose upon Quinnipiac and the speculative nature of the injury caused to the Plaintiff, the Court finds that the Plaintiff has failed to establish that the balance of hardship tips decidedly in his favor.

## III.  <u>CONCLUSION</u>

Based on the above reasoning, the Plaintiff's motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  May 19, 2010.